UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT HACKWORTH, JR., <br><br> Plaintiff, <br><br> v. <br><br> E. AREVALOS, et al., <br><br> Defendants. | No.  1:19-cv-1362 NONE JLT P <br><br> **ORDER GRANTING PLAINTIFF'S MOTION TO MOVE THE CASE FORWARD AND MOTION FOR SCREENING OF COMPLAINT; AND** <br><br> **ORDER DIRECTING PLAINTIFF TO SUBMIT A RESPONSE** <br><br> **(Docs. 8, 17, 18)** <br><br> **THIRTY-DAY DEADLINE** |

Plaintiff has filed a first amended complaint asserting constitutional claims against governmental employees and/or entities.[1] (Doc. 8.) The Court is required to screen complaints brought by inmates seeking relief against a governmental entity or an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a).  The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b)(1), (2).  "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines

---

[1] Plaintiff filed his first amended complaint before his original complaint could be screened pursuant to 28 U.S.C. § 1915A(a).

1

that . . . the action or appeal . . . fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

## I.     Pleading Standard

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)), and courts "are not required to indulge unwarranted inferences," Doe I v. Wal-Mart Stores, Inc., 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted). While factual allegations are accepted as true, legal conclusions are not. Iqbal, 556 U.S. at 678.

Prisoners may bring § 1983 claims against individuals acting "under color of state law." See 42 U.S.C. § 1983, 28 U.S.C. § 1915(e) (2)(B)(ii). Under § 1983, Plaintiff must demonstrate that each defendant personally participated in the deprivation of his rights. Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002). This requires the presentation of factual allegations sufficient to state a plausible claim for relief. Iqbal, 556 U.S. at 678-79; Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009). Prisoners proceeding pro se in civil rights actions are entitled to have their pleadings liberally construed and to have any doubt resolved in their favor, Hebbe v. Pliler, 627 F.3d 338, 342 (9th Cir. 2010) (citations omitted), but nevertheless, the mere possibility of misconduct falls short of meeting the plausibility standard, Iqbal, 556 U.S. at 678; Moss, 572 F.3d at 969.

## II.    Plaintiff's Allegations

Plaintiff's claims arose during his incarceration at California Substance Abuse Treatment Facility ("CSATF") in Corcoran, California, and California State Prison in Corcoran, California ("CSP-Cor"). He names five defendants, each of whom is sued in their official and individual capacities: CSATF Correctional Officer ("CO") E. Arevalos, CSATF Sergeant J. Brainaro, CSATF Lieutenant D. Stohl, CSP-Cor Correctional Counselor 1 ("CC1") M. Wright, and CSP-Cor Correctional Counselor 2 ("CC2") B. Gamboa. By way of relief, plaintiff seeks damages and a hold placed on the defendants' homes and bank accounts.

Plaintiff's allegations may be fairly summarized as follows:

On March 1, 2018, while housed at CSATF, Plaintiff was involved in a verbal altercation with CO Arevalos, which ended with Plaintiff threatening to file an inmate grievance to complain. Because of Plaintiff's threat to file the grievance, CO Arevalos stated, "Ok, I got something for you, just wait" and "We will see who has the last word." Later that day, CO Arevalos issued a falsified Rules Violation Report accusing Plaintiff of masturbating while looking at her.

Because of the report, Plaintiff was immediately placed in a holding cage office, where Sergeant Brainaro falsely claimed that Plaintiff admitted to the charge, saying, "Let a man be a man." Plaintiff was then interviewed by Lieutenant Stohl, who falsely claimed that other officers witnessed the incident. Lt. Stohl then decided to place Plaintiff in "the hole" (the Administrative Segregation Unit) and sent a crime incident report to the DA. When Plaintiff received a copy of the incident report, however, no officer corroborated CO Arevalos's claim.

Plaintiff denied the charge and was ultimately cleared of it on May 10, 2018. However, as a result of the accusation, Plaintiff was transferred to CSP-Cor on or around March 23, 2018, to participate in a sex offender program. When he first arrived, he met with CC1 Wright and a CC2 J. Bugarin[2] at an Institution Classification Committee (UCC) meeting. During the ensuing conversation, Plaintiff sought reassurance that he would be returned to CSATF if he was found not guilty. In response, CCI Wright and CC2 Bugarin suggested that Plaintiff would not be released from the sex offender program before he completed it, even if he was found not guilty. Indeed, Plaintiff remained in the program long after he was cleared of the masturbation charge. Plaintiff blames this delay on CC1 Wright and CC2 Bugarin, who, despite having received notice on May 12 and May 16 that Plaintiff had been found not guilty, failed to timely convene another committee meeting, waiting instead until June 1 and finally returning Plaintiff to CSATF on June 19.

---

[2] Plaintiff has apparently misidentified the CC2 at CSP-Cor. In his caption, he identifies this individual as B. Gamboa. See First Am. Compl. (Doc. 8 at 2). However, the body of the pleading and attachments to it identify this individual as J. Bugarin. Id. (Doc. 8 at 12-13, 38-39).

Attachments to the pleading reveal that the May 10 not guilty ruling was approved on May 26 by the Chief Disciplinary Officer, concluding the RVR process. See First Am. Compl. Attach. (Doc. 8 at 59-63). On June 1, Plaintiff appeared before the Classification Committee where he as approved for transfer to Kern Valley State Prison with an alternate of CSATF. Id. On June 14, he was endorsed to transfer back to CSATF, and the transfer occurred on June 19. Id.

On November 14, 2018, after Plaintiff returned to CSATF, he was violently attacked by two inmates who were convinced that Plaintiff was guilty of the masturbation charge since CO Arevalos filed a report about it and since Plaintiff had been housed in "the hole" and then sent to the sex offender program. See First Am. Compl. (Doc. 8 at 9-10, 73-74). The inmates also allegedly referenced the statement included in the incident report that Sergeant Brainaro falsely attributed to Plaintiff ("Let a man be a man"). Plaintiff does not specify how the inmates were aware of this information, though an inmate grievance attached to the pleading suggests that he blames CO Arevalos for the dissemination of the information. Id. (Doc. 8 at 50).

**III.     Discussion**

   **A. Official v. Individual Capacity Claims**

The Eleventh Amendment bars suits for money damages in federal court against state officials in their official capacity. Aholelei v. Department of Public Safety, 488 F.3d 1144, 1147 (9th Cir. 2007). However, it does not bar official capacity suit for prospective relief, Wolfson v. Brammer, 616 F.3d 1045, 1065-66 (9th Cir. 2010); nor does it bar suit for damages against state officials in their personal capacities. Hafer v. Melo, 502 U.S. 21, 30 (1991); Porter v. Jones, 319 F.3d 483, 491 (9th Cir. 2003).

"Personal-capacity suits . . . seek to impose individual liability upon a government officer for actions taken under color of state law." Hafer, 502 U.S. at 25; Suever v. Connell, 579 F.3d 1047, 1060-61 (9th Cir. 2009). Where a plaintiff is seeking damages against a state official and the complaint is silent as to capacity, a personal capacity suit is presumed given the bar against an official capacity suit. Shoshone-Bannock Tribes v. Fish & Game Comm'n, 42 F.3d 1278, 1284 (9th Cir. 1994); Price v. Akaka, 928 F.2d 824, 828 (9th Cir. 1991). Based on this legal authority,

the Court will presume that plaintiff intends to seek damages against the defendants in their individual capacities only.

That being said, a claim for prospective injunctive relief against a state official in his official capacity is not barred by the Eleventh Amendment provided the official has authority to implement the requested relief. Will v. Michigan Dept. of State Police, 491 U.S. 58, 92 (1989); accord Rouser v. White, 707 F. Supp. 2d 1055, 1066 (E.D. Cal. 2010) (proper defendant for injunctive relief in suit seeking implementation of CDCR policy is the CDCR Secretary in his official capacity). While prospective injunctive relief is permitted in an official capacity claim, Plaintiff's request for a hold on the Defendants' homes and bank accounts appears improper and unrelated to the nature of his claims. It also does not appear to be a form of relief that any of the named Defendants can implement.

**B.  First Amendment Retaliation**

Plaintiff accuses CO Arevalos of retaliating against Plaintiff by filing a false report after the latter threatened to file a grievance. He also alleges that Sergeant Brainaro and Lt. Stohl falsified information in support of CO Arevalos's false report.

Generally, the filing of a false report by a prison official against a prisoner is not a per se violation of the prisoner's constitutional rights. See Muhammad v. Rubia, 2010 WL 1260425, at *3 (N.D. Cal., Mar. 29, 2010), aff'd, 453 Fed. App'x 751 (9th Cir. 2011) ("[A] prisoner has no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest. As long as a prisoner is afforded procedural due process in the disciplinary hearing, allegations of a fabricated charge fail to state a claim under § 1983.") (citations omitted); Harper v. Costa, 2009 WL 1684599, at *2-3 (E.D. Cal., June 16, 2009), aff'd, 393 Fed. Appx. 488 (9th Cir. 2010) ("Although the Ninth Circuit has not directly addressed this issue in a published opinion, district courts throughout California ... have determined that a prisoner's allegation that prison officials issued a false disciplinary charge against him fails to state a cognizable claim for relief under § 1983.").

There are, however, two ways that allegations that an inmate has been subjected to a false disciplinary report can state a cognizable civil rights claim: (1) when the prisoner alleges that the

false disciplinary report was filed in retaliation for his exercise of a constitutional right and (2) when the prisoner alleges that he was not afforded procedural due process in a proceeding concerning the false report. See Hines v. Gomez, 108 F.3d 265, 269 (9th Cir. 1997) ("[T]his court has reaffirmed that prisoners may still base retaliation claims on harms that would not raise due process concerns."); Freeman v. Rideout, 808 F.2d 949, 951 (2d Cir. 1986) (holding that the filing of a false disciplinary charge against a prisoner is not actionable under § 1983 if prison officials provide the prisoner with procedural due process protections); Hanrahan v. Lane, 747 F.2d 1137, 1140-41 (7th Cir. 1984) ("[A]n allegation that a prison guard planted false evidence which implicates an inmate in a disciplinary infraction fails to state a claim for which relief can be granted where the procedural due process protections as required in Wolff v. McDonnell are provided.").

The fundamentals of a retaliation claim are easily summarized: "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005) (citing Resnick v. Hayes, 213 F.3d 443, 449 (9th Cir. 2000)). It is the plaintiff's burden to prove each of these elements. Pratt v. Rowland, 65 F.3d 802, 806 (9th Cir. 1995).

Plaintiff states a cognizable retaliation claim against CO Arevalos for filing of a false charge against Plaintiff after the latter threatened to file a grievance. As a result of this grievance, Plaintiff was placed in "the hole" and then transferred to another institution where he was forced to participate in a sex offender program. Because Plaintiff adequately links the false report to protected conduct, these allegations are sufficient to proceed against CO Arevalos.

On the other hand, Plaintiff has not alleged a cognizable claim against either Sergeant Brainaro or Lt. Stohl since there are no allegations to suggest that these defendants were aware of Plaintiff's protected conduct – i.e., his threat to file an inmate grievance against CO Arevalos. There is also no allegation that Plaintiff was not afforded procedural due process in the hearing on CO Arevalos's false report. Therefore, under the facts alleged, Plaintiff fails to state a claim

against Sergeant Brainaro or Lt. Stohl.

**C. Failure to Protect**

Plaintiff next alleges that, upon his return to CSATF from CSP-Cor, he was assaulted by other inmates who referenced not only CO Arevalos's report, but also the statement falsely attributed to Plaintiff by Sergeant Brainaro ("Let a man be a man."). The Court construes this claim as an Eighth Amendment failure to protect claim.

In a "failure-to-protect" Eighth Amendment violation claim, an inmate must show that a prison official's act or omission (1) was objectively, sufficiently serious, and (2) the official was deliberately indifferent to inmate's health or safety. Farmer v. Brennan, 511 U.S. 825, 834 (1994); Hearns v. Terhune, 413 F.3d 1036, 1042 (9th Cir. 2005). The failure of prison officials to protect inmates from attacks by other inmates may rise to the level of an Eighth Amendment violation where prison officials know of and disregard a substantial risk of serious harm to the plaintiff. See Farmer, 511 U.S. at 847; Hearns, 413 F.3d at 1040. A plaintiff may state a claim for deliberate indifference against a supervisor based on the supervisor's knowledge of, and acquiescence in, unconstitutional conduct by his or her subordinates. Starr, 652 F.3d at 1207. "A defendant may be held liable as a supervisor under § 1983 'if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.'" Id.

A prison official may violate an inmate's Eighth Amendment rights by providing information to other inmates with the knowledge that doing so creates a substantial risk of serious harm to the inmate, if the official provides the information with the intention of creating such a risk. See Valandingham v. Bojorquez, 866 F.2d 1135, 1138 (9th Cir. 1989) (allegations that prison officials labeled prisoner a "snitch" sufficient to survive motion to dismiss; plaintiff "may have a claim ... for violation of his right to be protected from violence in custody"); see also Noll v. Carlson, 809 F.2d 1446, 1449 n.4 (9th Cir. 1987) (plaintiff allegedly placed in prison with "known enemies" should be given leave to amend his complaint, as he "may be able to amend his complaint to allege facts showing that prison officials acted with 'deliberate indifference' to his safety in violation of the eighth amendment") (citations omitted).

Plaintiff's failure-to-protect claim fails for lack of specificity. Initially, a sex offender label clearly carries dangerous implications in prison. See Johnson v. Robinson, 2015 WL 882021, at *14 (E.D. Cal. Mar. 2, 2015), report and recommendation adopted, 2015 WL 3603942 (E.D. Cal. June 5, 2015), aff'd, 692 Fed. Appx. 371 (9th Cir. 2017) ("the seriousness of the 'sex offender' label in prison is tangible enough to support, in certain circumstances, a claim that a defendant used the dangerousness implications of that label or ignored them in deliberate indifference to an inmate's safety."); see also Knight v. Runnels, 2007 WL 2390139, at *14 (E.D. Cal. Aug. 20, 2007) (finding deliberate indifference claim stated where plaintiff "allege[d] that this defendant put a 'R-suffix' in his file knowing that, if plaintiff was put in general population, he would be stabbed"). With that said, while the inmates were evidently aware of the masturbation charge against Plaintiff, including details in the investigative report, it is not clear *how* they learned that information. Plaintiff does not include any allegations to show that one or more of the defendants informed the inmates of the charge knowing that it would create a risk to Plaintiff's health or safety. In attachments to the pleading, Plaintiff suggests that CO Arevalos was responsible for the dissemination of the information, but there are no factual allegations to support this conclusory statement. Accordingly, this claim fails.

**D.  Delayed Prison Hearing**

Plaintiff next suggests that CC1 Wright and CC2 Bugarin failed to comply with institutional regulations regarding the timing of the classification committee meeting, resulting in his delayed return to CSATF. As a general rule, though, the violation of state regulations does not rise to the level of a constitutional violation. See Bostic v. Carlson, 884 F.2d 1267, 1270 (9th Cir. 1989), overruled on other grounds, Nettles v. Grounds, 830 F.3d 922 (9th Cir. 2016); Ybarra v. Bastian, 647 F.2d 891, 892 (9th Cir. 1981). In itself, then, a state employee's failure to follow state law does not state a claim under Section 1983.

Insofar as Plaintiff claims that his due process rights were violated by the delay, the attachments to the pleading suggest that Plaintiff's not guilty finding was approved by the Chief Disciplinary Officer on May 26, 2018, and that Plaintiff appeared before the Classification Committee less than a week later on June 1, 2018. These dates are consistent with institutional

regulations. See Cal. Code Reg. tit. 15 § 3315(g) ("Any serious disciplinary action requiring reconsideration of an inmate's program, work group, or housing assignment, shall be referred to the next reasonably scheduled classification committee for review. This review shall not occur until the chief disciplinary officer's audit of the RVR has been concluded. The classification committee shall affirm or modify the inmate's program, work group, or housing assignment.") The attachments also reveal that Plaintiff was approved for transfer to CSATF at the hearing and that his transfer occurred by June 19, shortly after the transfer was endorsed. Because there is no constitutional violation on these facts, Plaintiff fails to state a cognizable claim against CC1 Wright and CC2 Bugarin.

## IV.     Conclusion

Plaintiff's first amended complaint states a cognizable First Amendment retaliation claim against CO Arevalos. The remaining claims are not cognizable as pled. The Court will grant Plaintiff the opportunity to file an amended complaint to cure noted defects, to the extent he believes in good faith he can do so. Noll v. Carlson, 809 F.2d 1446, 1448-49 (9th Cir. 1987). Alternatively, Plaintiff may forego amendment and notify the Court that he wishes to stand on his complaint. See Edwards v. Marin Park, Inc., 356 F.3d 1058, 1064-65 (9th Cir. 2004) (plaintiff may elect to forego amendment). If he chooses this option, the Court will issue findings and recommendations, Plaintiff will have an opportunity to object, and the matter will be decided by a district judge.

If Plaintiff does not wish to file an amended complaint, and he is agreeable to proceeding only on the claim found to be cognizable, he may file a notice informing the Court that he does not intend to amend, and he is willing to proceed only on his cognizable claim. The undersigned will then recommend that his remaining claims be dismissed, and the Court will order service on CO Arevalos.

If Plaintiff chooses to amend, he must demonstrate that the alleged acts resulted in a deprivation of his constitutional rights. Iqbal, 556 U.S. at 677-78. Plaintiff must set forth "sufficient factual matter . . . to 'state a claim that is plausible on its face.'" Id. at 678 (quoting Twombly, 550 U.S. at 555). Plaintiff should note that although he has been given the opportunity to amend, it is not for the purposes of adding new claims. George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007) (no

"buckshot" complaints). Plaintiff should carefully read this screening order and focus his efforts on curing the deficiencies set forth above.

If Plaintiff files an amended complaint, it should be brief, Fed. R. Civ. P. 8(a), but it must state what each named defendant did that led to the deprivation of Plaintiff's constitutional rights, Iqbal, 556 U.S. at 676-677. Although accepted as true, the "[f]actual allegations must be [sufficient] to raise a right to relief above the speculative level. . ." Twombly, 550 U.S. at 555 (citations omitted).  Finally, an amended complaint supersedes the prior complaint, see Loux v. Rhay, 375 F.2d 55, 57 (9th Cir. 1967), and it must be "complete in itself without reference to the prior or superseded pleading," Local Rule 220.  Accordingly, the Court **ORDERS** that:

1. Plaintiff's motion for the Court to move the case forward (Doc. 17) and motion for screening of the complaint (Doc. 18) are GRANTED;
2. Within thirty days from the date of service of this order, Plaintiff must:
    a. File a second amended complaint curing the deficiencies identified by the Court in this order, or
    b. Notify the Court in writing that he does not wish to file a second amended complaint and that he is willing to proceed only on the claim found to be cognizable in this order; or
    c. Notify the Court in writing that he wishes to stand on his complaint as written; and

///
///
///

3. If Plaintiff fails to comply with this order, the undersigned will recommend the action be dismissed for failure to obey a court order and failure to prosecute.

IT IS SO ORDERED.

Dated:   **June 28, 2020**                              **/s/ Jennifer L. Thurston**
                                                                              UNITED STATES MAGISTRATE JUDGE

10