1
2
3
4
5
6
7
8                     UNITED STATES DISTRICT COURT

9                   EASTERN DISTRICT OF CALIFORNIA

10

11    ROBERT HACKWORTH,                    Case No. 1:19-cv-01362-ADA-CDB (PC)

12                 Plaintiff,              ORDER GRANTING PLAINTIFF'S MOTION
                                          FOR AN EXTENSION OF TIME *NUNC PRO
13        v.                              TUNC* AND GRANTING PLAINTIFF'S
                                          MOTION TO ADVANCE THE CASE
14    E. AREVALOS, *et al.*,               (Docs. 81, 85)

15                 Defendants.            FINDINGS AND RECOMMENDATIONS
                                          TO GRANT DEFENDANTS BRAINARD
16                                        AND STOHL'S MOTION FOR SUMMARY
                                          JUDGMENT BASED ON FAILURE TO
17                                        EXHAUST ADMINISTRATIVE REMEDIES
                                          (Doc. 63)
18
                                          FINDINGS AND RECOMMENDATIONS
19                                        TO DENY DEFENDANT AREVALOS'S
                                          MOTION FOR SUMMARY JUDGMENT
20                                        (Doc. 77)

21
                                          FINDINGS AND RECOMMENDATIONS
22                                        TO DENY PLAINTIFF'S MOTION FOR
                                          DEFAULT  (Doc. 79)
23

24                                        **FOURTEEN (14) DAY DEADLINE**

25

26        Plaintiff Robert Hackworth is a state prisoner proceeding *pro se* and *in forma pauperis* in

27   this civil rights action filed under 42 U.S.C. § 1983.  This action proceeds on First and Eighth

28   Amendment claims raised against Defendants Arevalos, Brainard, and Stohl in Plaintiff's second

1  amended complaint.  (*See* Docs. 20, 26.)  Defendants Brainard and Stohl ("Defendants") have

2  filed a motion for summary judgment based on Plaintiff's failure to exhaust administrative

3  remedies prior to filing this action.  (Doc. 63.)  Defendant Arevalos ("Defendant") has filed a

4  motion on the merits and asserting qualified immunity.  (Doc. 77.)  Also before the Court is

5  Plaintiff's motion for default judgment.  (Doc. 79.)  These motions have been submitted on the

6  record without oral argument pursuant to Local Rule 230(*l*).

7      For the following reasons, Court recommends that Defendant Brainard and Stohl's

8  motion for summary judgment (Doc. 63) be granted; Defendant Arevalos's motion for summary

9  judgment (Doc. 77) be denied; and Plaintiff's motion for default judgment (Doc. 79) be denied.

10  **I.      SUMMARY JUDGMENT STANDARDS**

11      Summary judgment is appropriate when the moving party "shows that there is no genuine

12  dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed.

13  R. Civ. P. 56(a).  A party's assertion that a fact is disputed or cannot be disputed must be

14  supported by (1) citing to particular parts of materials in the record, including but not limited to

15  depositions, documents, declarations, or discovery; or (2) showing that the materials cited do not

16  establish the presence or absence of a genuine dispute or that the opposing party cannot produce

17  admissible evidence to support the fact.  Fed. R. Civ. P. 56(c)(1).  The court may consider other

18  materials in the record not cited to by the parties, but it is not required to do so.  Fed. R. Civ. P.

19  56(c)(3); *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001);

20  *accord Simmons v. Navajo Cnty., Ariz.*, 609 F.3d 1011, 1017 (9th Cir. 2010) (applying standard

21  to § 1983 claim).

22      The moving party bears the initial burden of proving the absence of a genuine issue of

23  material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).  The moving party may

24  accomplish this by presenting evidence that negates an essential element of the non-moving

25  party's case.  *Id.*  Alternatively, the movant can demonstrate that the non-moving party cannot

26  produce evidence to support an essential element of his claim that must be proven at trial.  *Id.*; Fed.

27  R. Civ. P. 56(c)(1)(B).  "[C]omplete failure of proof concerning an essential element of the non-

28  moving party's case necessarily renders all other facts immaterial."  *Celotex*, 477 U.S. at 322–23.

1   If the moving party meets this initial showing, the burden shifts to the non-moving party

2   to establish "specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty*

3   *Lobby, Inc.*, 477 U.S. 242, 257 (1986) (citing Rule 56(e)); *Celotex*, 477 U.S. at 323.  This

4   requires Plaintiff to show more than "the mere existence of a scintilla of evidence." *Anderson*,

5   477 U.S. at 252.  The non-moving party cannot simply rely on the pleadings and conclusory

6   allegations in an affidavit. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990); *see also*

7   *Celotex*, 477 U.S. at 324.  Instead, the opposing party is required to tender evidence of specific

8   facts in the form of affidavits or admissible discovery material. *See* Fed. R. Civ. P. 56(c)(1).  In

9   attempting to show a factual dispute, the opposing party need not prove a material fact

10  conclusively in her favor.  It is sufficient that "the claimed factual dispute be shown to require a

11  jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv.* v.

12  *Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (quoting *First Nat'l Bank v.*

13  *Cities Serv. Co.*, 391 U.S. 253, 288–89 (1968)).  "Where the record taken as a whole could not

14  lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial."

15  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotation

16  marks omitted).  However, when deciding a motion for summary judgment, the court must view

17  any inferences drawn from the underlying facts in a light most favorable to the non-moving

18  party. *Id.*

19  The Ninth Circuit has "held consistently that courts should construe liberally motion

20  papers and pleadings filed by *pro se* inmates and should avoid applying summary judgment rules

21  strictly." *Soto v. Sweetman*, 882 F.3d 865, 872 (9th Cir. 2018) (quoting *Thomas v. Ponder*, 611

22  F.3d 1144, 1150 (9th Cir. 2010)).  While prisoners are relieved from strict compliance, they still

23  must "identify or submit some competent evidence" to support their claims. *Soto*, 882 F.3d at

24  872.  Plaintiff's verified complaint may serve as an affidavit in opposition to summary judgment

25  if based on personal knowledge and specific facts admissible in evidence. *Lopez v. Smith*, 203

26  F.3d 1122, 1132 n.14 (9th Cir. 2000) (en banc).

27  ///

28  ///

## II.    FACTUAL ALLEGATIONS

Plaintiff's claims arose during his incarceration at California Substance Abuse Treatment Facility ("SATF") in Corcoran, California.  On March 1, 2018, Plaintiff was involved in a verbal altercation with CO Arevalos regarding a missing package, during which Plaintiff threatened to "602 your fat ass."  CO Arevalos allegedly responded, "Ok, I got something for you.  Just wait" and "we see who has the last word."  (Doc. 63-4 at 12.)  Later that day, CO Arevalos issued a Rules Violation Report ("RVR") for indecent exposure, accusing Plaintiff of masturbating while looking at her.  (*Id.*)

Plaintiff was placed in a holding cell in the program office, where Sgt. J. Brainard informed him of the RVR.  Plaintiff responded that CO Arevalos lied and only said that because Plaintiff threatened to file a grievance against her.  Sgt. Brainard claimed that Plaintiff admitted to the charge, saying, "[l]et a man be a man," which Plaintiff denies.  Plaintiff was then interviewed by Lt. Stohl; Plaintiff again denied the charge and said that CO Arevalos issued the RVR in retaliation for threatening to file a grievance against her.  Lt. Stohl stated that other officers witnessed the incident and then placed Plaintiff in "the hole" (the Administrative Segregation Unit, or "ad-seg") and referred the incident to the district attorney.  Plaintiff states was cleared of the charge by Lt. Stohl on May 10, 2018.[1]

On March 13, 2018, Plaintiff was transferred from SATF to California State Prison in Corcoran and required to participate in the illegal sex offender program ("IEX").  (Doc. 20 at 35).  On June 19, 2018, Plaintiff was transferred back to SATF.  (*Id.* at 56.)

On November 14, 2018, Plaintiff was attacked by two inmates, allegedly because CO Arevalos and Sgt. Brainerd told them about Plaintiff's masturbation charge and alleged "let a man be a man" statement.  Plaintiff suffered a cut on the neck, a broken nose, and black eyes.

## III.    BRAINARD AND STOHL'S MOTION FOR SUMMARY JUDGMENT

Defendants Brainard and Stohl filed a motion for summary judgment based on non-exhaustion of administrative remedies, supported by the declaration of G. Lujan, Correctional

---

[1] The second level response indicates that the RVR was adjudicated and dismissed by Senior Hearing Officer Lt. Amayo on May 10, 2018.  (Doc. 20 at 51).

1   Counselor II ("CC") and Appeals Coordinator at SATF.  (Docs. 63, 63-4.)  According to CC

2   Lujan, Plaintiff's appeal records at SATF reflect that Appeal 18-01390 was the only inmate

3   grievance Plaintiff submitted concerning CO Arevalos's conduct raised in this action.  (Lujan

4   Decl., Doc. 63-4 at ¶ 8.)  In this grievance, Plaintiff alleged that CO Arevalos issued a false RVR

5   against him as retaliation for his threatening to file a 602 and to get other inmates to attack

6   Plaintiff.  (*Id.* at 10, Ex. B.)

7       Plaintiff filed a response in opposition to the motion for summary judgement, to which

8   Defendants filed a reply.  (Docs. 65, 69.)  The Court concludes that, because the grievance did

9   not identify Defendants Brainard or Stohl, the claims against them were not exhausted at the

10  administrative level and must be dismissed.

11      **A.      Prison Litigation Reform Act ("PLRA")**

12      The PLRA provides that "[n]o action shall be brought with respect to prison conditions

13  under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or

14  other correctional facility until such administrative remedies as are available are exhausted."  42

15  U.S.C. § 1997e(a).  Exhaustion of administrative remedies is mandatory, and a prisoner may not

16  file a complaint raising unexhausted claims.  *Jones v. Bock*, 549 U.S. 199, 211 (2007); *Rhodes

17  v. Robinson*, 621 F.3d 1002, 1005 (9th Cir. 2010) ("[A] prisoner must exhaust his

18  administrative remedies for the claims contained within his complaint before that complaint is

19  tendered to the district court.").  The Ninth Circuit has "made clear that '[e]xhaustion

20  requirements apply based on when a plaintiff files the operative complaint, in accordance with

21  the Federal Rules of Civil Procedure."  *Saddozai v. Davis*, 35 F.4th 705, 708 (9th Cir. 2022)

22  (quoting *Jackson v. Fong*, 870 F.3d 928, 935 (9th Cir. 2017)).  The exhaustion requirement

23  applies to all inmate suits relating to prison life, *Porter v. Nussle*, 534 U.S. 516, 532 (2002),

24  regardless of the relief sought by the prisoner or offered by the administrative process, *Booth v.

25  Churner*, 532 U.S. 731, 741 (2001).

26      Under the PLRA, exhaustion is "mandatory" and requires the prisoner to complete the

27  administrative review process in "compliance with deadlines and other critical procedural rules,

28  with no exceptions for special circumstances."  *Ramirez v. Collier*, 594 U.S. —, 142 S. Ct. 1264,

1   1275, 212 L. Ed. 2d 262, (2022) (internal quotation marks omitted) (quoting *Woodford v. Ngo*,

2   548 U.S. 81, 90–91 (2006); *Ross v. Blake*, 578 U.S. 632, 635 (2016)).  The rules that must be

3   followed, the level of detail necessary in a grievance, and the boundaries of proper exhaustion

4   are defined by the prison's grievance procedures and not the PLRA.  *Eaton v. Blewett*, 50 F.4th

5   1240, 1245 (9th Cir. 2022) (quoting *Ross*, 578 U.S. at 643–44).

6           An "untimely or otherwise procedurally defective appeal" will not satisfy the exhaustion

7   requirement.  *Woodford*, 548 U.S. at 83, 90.  However, a grievance need not include legal

8   terminology or legal theories unless they are in some way needed to provide notice of the harm

9   being grieved.  *Griffin v. Arpaio*, 557 F.3d 1117, 1120 (9th Cir. 2009).  A grievance also need

10  not contain every fact necessary to prove each element of an eventual legal claim.  *Jones*, 549

11  U.S. at 204.  "[A] grievance suffices if it alerts the prison to the nature of the wrong for which

12  redress is sought."  *Reyes v. Smith*, 810 F.3d 654, 659 (9th Cir. 2016) (quoting *Sapp v. Kimbrell*,

13  623 F.3d 813, 824 (9th Cir. 2010)).  The exhaustion requirement allows prison officials to have

14  an opportunity to resolve disputes before the filing of a court action against them.  *Jones*, 549

15  U.S. at 204.

16          The failure to exhaust administrative remedies is an affirmative defense that the

17  defendant must plead and prove.  *Id.* at 204, 216.  The defendant bears the burden of producing

18  evidence that proves a failure to exhaust.  *Albino v. Baca*, 747 F.3d 1162, 1166 (9th Cir. 2014).

19  On a motion for summary judgment, the defendant bears the initial burden of proving (1) the

20  existence of an available administrative remedy, and (2) the plaintiff failed to exhaust that

21  remedy.  *Id.* at 1172.  If the defendant makes this showing, the burden shifts to the prisoner to

22  present "evidence showing that there is something in his particular case that made the existing

23  and generally available administrative remedies effectively unavailable to him."  *Id.* (citing *Hilao*

24  *v. Estate of Marcos*, 103 F.3d 767, 778 n.5 (9th Cir.1996)).

25          A remedy is available if it is "capable of use for the accomplishment of a purpose" or "is

26  accessible or may be obtained."  *Eaton*, 50 F.4th at 1245 (quoting *Ross*, 578 U.S. at 642).  The

27  Supreme Court has recognized three circumstances in which administrative remedies are

28  effectively unavailable: (1) when the grievance system "operates as a simple dead end—with

officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) when the system is "so opaque that it becomes, practically speaking, incapable of use"; and (3) "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Eaton*, 50 F.4th at 1245 (quoting *Ross*, 578 U.S. at 643–44).

The Ninth Circuit has found administrative remedies effectively unavailable in several other circumstances. *Eaton*, 50 F.4th at 1245 (citing *Fordley v. Lizarraga*, 18 F.4th 344, 358 (9th Cir. 2021) (a prison's failure to respond to an emergency grievance for several months in contravention of its own deadlines rendered administrative remedies unavailable); *Sapp*, 623 F.3d at 823 (a prison's improper screening of a grievance renders administrative remedies effectively unavailable); *Nunez v. Duncan*, 591 F.3d 1217, 1226 (9th Cir. 2010) (an inmate's inability to access a policy necessary to bring a timely administrative appeal excuses compliance with the exhaustion requirement); *Albino*, 747 F.3d at 1177 (an inmate's inability to access information about the administrative grievance process excuses compliance with the exhaustion requirement); *Marella v. Terhune*, 568 F.3d 1024, 1026 (9th Cir. 2009) (an inmate's inability to obtain the form necessary to submit a grievance excuses compliance with the exhaustion requirement).

If the court finds that remedies were not available, the prisoner exhausted available remedies, or the failure to exhaust available remedies should be excused, the motion for summary judgment is denied and the case proceeds to the merits. *Albino*, 747 F.3d at 1171. "If undisputed evidence viewed in the light most favorable to the prisoner shows a failure to exhaust, a defendant is entitled to summary judgment under Rule 56." *Id.* at 1172. When the district court concludes that the prisoner has not exhausted administrative remedies on a claim, the proper remedy is dismissal without prejudice of the portions of the complaint barred by section 1997e(a). *Jones*, 549 U.S. at 223–24; *see Lira v. Herrera*, 427 F.3d 1164, 1175–76 (9th Cir. 2005) ("Congress intended no special dismissal rules for § 1983 prisoner suits in addition to those spelled out in § 1997e(c).").

///

### B.    CDCR Grievance Process

The California Department of Corrections and Rehabilitation ("CDCR") has an administrative grievance system for prisoners to appeal any policy, decision, action, condition, or omission by the department or staff having an adverse effect on prisoner health, safety, or welfare.  Cal. Code Regs. tit. 15, § 3084.1(a) (2018).[2]  Compliance with 42 U.S.C. § 1997e(a) requires California state prisoners to use CDCR's grievance process to exhaust their claims prior to filing a complaint in court.  *See Sapp*, 623 F.3d at 818; *see also Woodford*, 548 U.S. at 85, 86 (treating § 3084.1 as "mandatory").

In 2018, the year relevant to Plaintiff's claims, California regulations required that inmates pursue administrative grievances through three levels of review in order to exhaust administrative remedies.  Cal. Code Regs. tit. 15, §§ 3084.1(a), 3084.7(d)(3).  To appeal an action or decision, an inmate must submit to the appeals coordinator a form CDCR 602 inmate appeal ("602") within thirty days of the action or decision being appealed or upon first knowledge of the action or decision.  *Id.*, §§ 3084.2(a), 3084.8(b).  The 602 must describe the specific issue under appeal and the relief requested; list all staff members involved and describe their involvement in the issue; and provide supporting documents.  *Id.*, §§ 3084.2(a), 3084.3.  Prison officials must file a response within thirty days.  *Id.*, § 3084.8(c)(1)–(c)(2).  The cancellation or rejection of an appeal at any level does not exhaust the appeal.  *Id.*, § 3084.1(b).

### C.    Discussion

Defendants Brainard and Stohl argue that Plaintiff failed to exhaust his administrative remedies for the claims asserted against them because Plaintiff's grievance does not refer to Brainard or Stohl or allege wrongdoing on their part.  (Doc. 63-2 at 5–6.)  In response to Defendants' motion, Plaintiff does not dispute that he never referred to Defendants by name in his grievance.  However, Plaintiff relies on section B of the 602, where he requested investigation of CO Arevalos "for having other officers to lie for her."  (*Id.* at 12.)  Plaintiff argues that CO Arevalos knew that those officers were Stohl and Brainard.  (*Id.* at 13.)

---

[2] Effective June 1, 2020, the new rules are set out in Cal. Code Regs. tit. 15, §§ 3480–3486.  For purposes of these findings and recommendations, all citations refer to the version of the regulations effective at times relevant to Plaintiff's claims.

1    Plaintiff further argues that, during the interview at the second level of review, B. Urban

2 (the interviewing sergeant) asked Plaintiff which officers were lying for CO Arevalos.  (Doc. 65

3 at 4.)  According to Plaintiff, he responded that the officers were Sgt. Brainard and Lt. Stohl, but

4 Sgt. Urban omitted this from his report.  (*Id.* at 4.)  Plaintiff asserts the third level of review was

5 based on the second level report, and Defendants' names were omitted from section F of the 602

6 despite Plaintiff identifying them during the interview.  (*Id.* at 13.)  Plaintiff further alleges that

7 the third level reviewers claimed they had lost his original appeal "so they would not have to rule

8 on what plaintiff placed in section (F) then claimed to use the 2nd level 602 as the original, when

9 that shouldn't have been done.  Because the 2nd level 602 don't [*sic*] have what plaintiff stated

10 in (F) section to the 3rd level."[3]  (*Id.* at 14.)

11    Regardless of what Plaintiff stated during his interview at the second level of review or

12 wrote in section F indicating his dissatisfaction with the second level response, Plaintiff's inmate

13 appeal 18-01390 plainly is directed at and seeks relief against only CO Arevalos.  (*See* Doc. 63-4

14 at 10–12.)  Specifically, in the "Action requested" section of the 602, Plaintiff wrote only, "I

15 would like C/O E. Arevalos investigated."  (*Id.* Ex. B.)  In the section of the 602 prompting the

16 inmate to explain why he was dissatisfied with the first level response, Plaintiff again referred

17 only to Arevalos.

18    Plaintiff emphasizes he knew Sgt. Brainard and Lt. Stohl were the officers who lied for

19 CO Arevalos; however, had Plaintiff intended for these defendants to be included in his

20 grievance, he should have named them in the grievance or submitted a 602 addressing their

21 specific conduct. This information is required by regulation:

22    (3) The inmate or parolee shall list all staff member(s) involved and shall

23 describe their involvement in the issue. To assist in the identification of staff
members, the inmate or parolee shall include the staff member's last name, first

24 initial, title or position, if known, and the dates of the staff member's involvement

25 in the issue under appeal. . . .

26

27    [3] Plaintiff's allegations are unclear whether he actually filled out section F in writing or if he is
again referencing his prior interview statement to Sgt. Urban.  This issue of fact is immaterial. The Court

28 notes that the copy of Plaintiff's appeal attached as an exhibit to Defendants' motion is stamped, "TREAT
AS ORIGINAL."  (Doc. 63-4 at 11, 12.).

1

2
    (4) The inmate or parolee shall state all facts known and available to him/her regarding the issue being appealed at the time of submitting the Inmate/Parolee Appeal form . . . .

3

4
Cal. Code Regs. tit. 15, § 3084.2(a)(3)–(4).  Plaintiff's purported identification of them during the

5
second-level interview is insufficient to satisfy these requirements to place the prison on

6
"adequate notice of the problem for which [he now] seeks redress."  *Sapp*, 623 F.3d at 824.

7
    Because of Plaintiff's failure to identify Defendants and describe their involvement as

8
required, Appeal 18-01390, while exhausted at the third level of review, did not exhaust the

9
claims against Brainard and Stohl.  Accordingly, their motion for summary judgment based on

10
Plaintiff's failure to exhaust administrative remedies must be granted.

11
## IV.    AREVALOS'S MOTION FOR SUMMARY JUDGMENT

12
    Plaintiff alleges that CO Arevalos retaliated against him by issuing a false RVR in

13
response to Plaintiff's threat to "602" her, in violation of Plaintiff's First Amendment right to

14
threaten to file grievances against prison officials.  Plaintiff further alleges that CO Arevalos

15
prompted and failed to protect him from a later attack by other inmates, in violation of Plaintiff's

16
Eighth Amendment rights.

17
    Defendant Arevalos filed a separate motion for summary judgment arguing that Plaintiff's

18
threat was not protected speech and that she did not fail to protect him.  (Doc. 77.)  Plaintiff filed

19
a response in opposition.[4]  (Doc. 82.)

20
### A.    First Amendment Retaliation

21
#### 1.    Legal Standard

22
    The Supreme Court has repeatedly held that "convicted prisoners do not forfeit all

23
constitutional protections by reason of their conviction and confinement in prison."  *Bell v.*

24
*Wolfish,* 441 U.S. 520, 545 (1979) (citations omitted).  It is well established that the First

25
Amendment protects a wide range of activity in a prison context. *Bruce v. Ylst,* 351 F.3d 1283,

26
1288 (9th Cir. 2003).  The right to file grievances against prison officials is among the rights

27

28
    [4] Plaintiff's motion for a thirty-day extension of time to respond to Defendant Arevalos's motion for summary judgment (Doc. 81) is granted *nunc pro tunc*.

1   retained by prisoners.  *Brodheim v. Cry*, 584 F.3d 1262, 1269 (9th Cir. 2009).  Threatening to file

2   an inmate grievance is also protected activity.  *McLaughlin v. Castro*, No. 1:17-cv-01597-DAD-

3   JLT (PC), 2019 WL 2544422, at *3 (E.D. Cal. June 20, 2019), *F&R adopted*, 2019 WL 4244529

4   (E.D. Cal. Sept. 6, 2019); s*ee also Entler v. Gregoire*, 872 F.3d 1031, 1039 (9th Cir. 2017)

5   (threats to sue fall within the purview of the constitutionally protected right to file grievances);

6   *Hargis v. Foster*, 312 F.3d 404, 411 (9th Cir. 2002) (holding that a jury could reasonably find

7   that charging plaintiff with a severe disciplinary infraction for his threats to sue "was an

8   'exaggerated response' to conduct that posed, at most, a *de minimis* risk to security."); *Patkins v.*

9   *Lisk*, 2017 WL 4773372, at *4 (N.D. Cal. Oct. 23, 2017) (denying qualified immunity because

10  no reasonable officer would have thought that filing false RVRs in retaliation for an inmate filing

11  or threatening to file a grievance was lawful).

12          Deliberate retaliation by a state actor against an individual's exercise of First

13  Amendment rights may be actionable under section 1983.  *Soranno's Gasco, Inc. v. Morgan*,

14  874 F.2d 1310, 1314 (9th Cir. 1989); *see Brodheim*, 584 F.3d at 1269 ("Retaliation against

15  prisoners for their exercise of [the right to file prison grievances] is itself a constitutional

16  violation, and prohibited as a matter.").  To state a claim for First Amendment retaliation, a

17  plaintiff must allege five elements: (1) he engaged in protected activity; (2) the state actor took

18  an adverse action against the plaintiff; (3) a causal connection between the adverse action and

19  the protected conduct; (4) the defendant's actions would chill or silence a person of ordinary

20  fitness from protected activities; and (5) the retaliatory action did not advance a legitimate

21  correctional goal.  *Chavez v. Robinson*, 12 F.4th 978, 1001 (9th Cir. 2021) (quoting *Rhodes*, 408

22  F.3d at 567–68).  On summary judgment, the plaintiff must demonstrate there is a triable issue

23  of material fact on each element.  *Brodheim*, 584 F.3d at 1269 n.3; *Pratt v. Rowland*, 65 F.3d

24  802, 806 (9th Cir. 1995).

25                        **2.      Discussion**

26          In her motion for summary judgment, Defendant Arevalos addresses only the first

27  element, whether Plaintiff engaged in protected activity.  Defendant argues that Plaintiff's threat

28  to "602 your fat ass" does not rise to the level of activity protected by the First Amendment.

1    (Doc. 77-2 at 5.)  Defendant argues further that the threat "cannot be separated from the

2    insubordinate, argumentative, and abusive nature of Hackworth's comments and establishes that

3    his statement does not rise to the level of protected conduct.  This is not a case in which an

4    inmate calmly informed a staff person that he wished to submit an inmate grievance."  (*Id.* at 5–

5    6.)  None of the cases cited by Defendant, however, stand for this proposition.

6        "The use of foul language towards prison staff is not protected conduct."  *Mitchell v.*

7    *Hernandez*, Case No. 1:07-cv-01322-AWI-DLB PC, 2008 WL 2489210, *3 (E.D. Cal. June 17,

8    2008) (court did not state what language was used and determined to be "foul").  "[A] number of

9    district courts have [held] verbal challenges to prison officials that are argumentative,

10   confrontational, and disrespectful are not protected by the First Amendment."  *Jackson v. Austin*,

11   No. 2:14-cv-0592 KJM KJN, 2014 WL 4656201, *3 (E.D. Cal. Sept. 16, 2014) (finding the facts

12   unclear whether defendant was aware the parties were discussing a hobby program or a

13   grievance, and plaintiff failed to plead the *Rhodes* elements).  Defendant also cites to *Johnson v.*

14   *Carroll*, where the plaintiff contended that his "verbal complaints and challenges to the excessive

15   and harassing strip searches performed by Officer Johnson was protected speech."  No. 2:08-cv-

16   1494 KJN P, 2012 WL 2069561, *33–34 (E.D. Cal. June 7, 2012).  In *Johnson*, the district court

17   found that the plaintiff's statements, which were argumentative, confrontational, disrespectful,

18   and "laced with expletives," were not protected speech.  *Id.* at *34.  The *Johnson* court cited

19   other cases that distinguished between, on the one hand, "an attempt to assert a prison

20   grievance"—for which Plaintiff's comment to Defendant that he would "602 your fat ass"

21   arguably is akin—to prisoner statements that were mere insults, put-downs, and otherwise

22   disconnected from merit-based grievances.  *Id.* at *33 n.15.

23       In contrast, Plaintiff Hackworth made a single, short statement, and his use of "fat ass" is

24   not the expletive-laden verbal attack described in *Johnson*.  Defendant argues, without legal

25   authority, that Plaintiff's statement does not rise to the level of protected speech simply because

26   it included a reference to "602."  (Doc. 77-2.)  When viewed in a light most favorable to

27   Plaintiff, whether his statement, "I'll 602 your fat ass," is protected by the First Amendment as a

28   threat to file a grievance, is a genuine issue of material fact that precludes summary judgment.

As to the second element for retaliation, Defendant does not dispute that Plaintiff suffered adverse consequences at the hands of state actors.  Specifically, Defendant issued an RVR against Plaintiff for indecent exposure; Plaintiff was placed in ad-seg; he was transferred to a different facility to participate in an IEX program for over four months; and he was attacked by fellow inmates because of Arevalos's allegations.

Next, to satisfy the causation element, Plaintiff must show that his constitutionally protected conduct was a "'substantial' or 'motivating' factor" for the alleged retaliatory action.  *Brodheim*, 584 F.3d at 1271 (quoting *Soranno's Gasco*, 874 F.2d at 1314).  "[P]laintiff must show that the defendant's retaliatory animus was 'a "but-for" cause, meaning that the adverse action against the plaintiff would not have been taken absent the retaliatory motive.'"  *Capp v. Cnty. of San Diego*, 940 F.3d 1046, 1053 (9th Cir. 2019) (as amended) (citation omitted).  An action colored by some degree of bad motive does not amount to a constitutional violation if that action would have been taken anyway.  *See Crawford-El v. Britton*, 523 U.S. 574, 593 (1998); *Hartman v. Moore*, 547 U.S. 250, 260 (2005) (holding that if retaliation is not the but-for cause, "the claim fails for lack of causal connection between unconstitutional motive and resulting harm, despite proof of some retaliatory animus in the official's mind.").  Retaliation is not established simply by showing adverse activity by a defendant after protected conduct; rather, a plaintiff must show a nexus between the two.  *See Huskey v. City of San Jose*, 204 F.3d 893, 899 (9th Cir. 2000).  However, "timing can properly be considered as circumstantial evidence of retaliatory intent."  *Bruce*, 351 F.3d at 1288 (quoting *Pratt*, 65 F.3d at 808).

Given the nature of Defendant's alleged statements and the temporal proximity to Plaintiff's threat to "602" her, Plaintiff has sufficiently raised a genuine issue of material fact whether Plaintiff's protected conduct was a substantial or motivating factor for Defendant's alleged retaliatory actions.  Therefore, Plaintiff has satisfied the third element for a retaliation claim.

To satisfy the fourth element, "the plaintiff must allege that the official's acts would chill or silence a person of ordinary firmness from future First Amendment activities."  *Pinard v. Clatskanie Sch. Dist. 6J*, 467 F.3d 755, 770 (9th Cir. 2006); *Rhodes*, 408 F.3d at 568.  The

1   chilling inquiry is governed by an objective standard, and "the infliction of harms other than a

2   total chilling effect can establish liability" for retaliatory conduct.  *Rhodes*, 408 F.3d at 569;

3   *Mendocino Env't Ctr. v. Mendocino Cnty.*, 192 F.3d 1283, 1300 (9th Cir. 1999).

4         The retaliatory actions Plaintiff alleges—receiving a false RVR, placement in

5   administrative segregation, transfer to another facility and placement in the IEX program, and

6   being attacked by other inmates—would chill or silence a person of ordinary firmness.  *See*

7   *Rhodes*, 408 F.3d at 568; *see also Watison v. Carter,* 668 F.3d 1108, 1115 (9th Cir. 2012)

8   (finding that inmate had stated a retaliation claim where he had alleged that the prison officer

9   filed a false disciplinary charge against him, placed him in administrative segregation, and

10   interfered with his parole hearing).  Defendant does not address the issue of chilling of First

11   Amendment activities, and Plaintiff has met his burden as to this issue.

12         Finally, Plaintiff must allege the absence of legitimate correctional goals for the conduct

13   of which he complains.  *Pratt*, 65 F.3d at 806.  "[T]he mere existence of a legitimate motive . . .

14   is insufficient to mandate dismissal" of a retaliation claim.  *Capp v. Cnty. of San Diego*, 940 F.3d

15   1046, 1056 (9th Cir. 2019).  Even if a legitimate penological goal exists, a plaintiff's allegations

16   that an official's actions were substantially motivated by the protected conduct are sufficient if

17   plaintiff plausibly alleges that the official would not have taken the same disciplinary action in

18   the absence of plaintiff's protected conduct.  *See O'Brien v. Welty*, 818 F.3d 920, 936 (9th Cir.

19   2016) ("We have previously made it clear that there is a right to be free from retaliation even if a

20   non-retaliatory justification exists for the defendants' action.").

21         A false RVR does not advance legitimate correctional goals.  *See, e.g.*, *Savage v.*

22   *Villagrana*, No. 1:11-cv-00599-AWI, 2011 WL 4375011, at *3 (E.D. Cal. Sept. 19, 2011);

23   *Patkins v. Koenig*, 2021 WL 1599319, at *13 (N.D. Cal. Apr. 23, 2021); *Garcia v. Kernan*, No.,

24   2019 WL 3429175, at *12 (S.D. Cal. July 30, 2019); *LeBlanc v. Tabak*, at *4 (C.D. Cal. Apr. 28,

25   2017).  Plaintiff's allegations are sufficient to call into question the legitimacy of the RVR,

26   which satisfies the fourth element for a retaliation claim.

27         The record presently before the Court reveals genuine issues of material fact, as well as

28   the ultimate issue of whether Defendant retaliated against Plaintiff for protected conduct, which

1    preclude entry of summary judgment on Plaintiff's First Amendment claim.

2        **B.    Failure to Protect**

3        The Eighth Amendment requires prison officials to protect prisoners from violence at the

4    hands of other prisoners because "being violently assaulted in prison is simply not part of the

5    penalty that criminal offenders pay for their offenses against society." *Farmer v. Brennan*, 511

6    U.S. 825, 833–34 (1994); *Clem v. Lomeli*, 566 F.3d 1177, 1181 (9th Cir. 2009).  In a "failure-to-

7    protect" claim, a prisoner must show that a prison official's act or omission (1) was objectively,

8    sufficiently serious, and (2) the official was subjectively, deliberately indifferent to inmate's health

9    or safety.  *Farmer*, 511 U.S. at 834; *Hearns v. Terhune*, 413 F.3d 1036, 1042 (9th Cir. 2005).

10        Under the objective prong, "[w]hat is necessary to show sufficient harm for the purposes

11    of the Cruel and Unusual Punishment Clause depends on the claim at issue." *Hudson v.*

12    *McMillian*, 503 U.S. 1, 8 (1992).  For a failure-to-protect claim, the prisoner must show that he

13    was placed in conditions that posed a substantial risk of serious harm.  *Farmer*, 511 U.S. at 834

14    (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)).

15        The subjective prong requires "more than ordinary lack of due care for the prisoner's

16    interest or safety."  *Farmer*, 511 U.S. at 835 (quotation omitted).  To prove deliberate

17    indifference, a plaintiff must show that the official knew of and disregarded an excessive risk to

18    inmate safety.  *Id.* at 837.  Deliberate indifference is more than negligence but less than

19    intentional acts specifically intended to cause harm.  *Hearns*, 413 F.3d at 1040.

20        A prison official need not "believe to a moral certainty" that a prisoner is at risk of harm

21    "before [he] is obligated to take steps to prevent such an assault," but "he must have more than a

22    mere suspicion that an attack will occur."  *Berg v. Kincheloe*, 794 F.2d 457, 459 (9th Cir. 1986)

23    (quoting *State Bank of St. Charles v. Camic*, 712 F.2d 1140, 1146 (7th Cir. 1983)).  The

24    obviousness of the risk may be sufficient to establish knowledge.  *See Farmer*, 511 U.S. at 842;

25    *Wallis v. Baldwin*, 70 F.3d 1074, 1077 (9th Cir. 1995).  The prisoner may demonstrate that the

26    risk was obvious due to the prisoner's personal characteristics or conditions within the prison.

27    *See Lemire v. Cal. Dep't of Corr. & Rehab.*, 726 F.3d 1062, 1078 (9th Cir. 2013).  "[S]peculative

28    and generalized fears of harm at the hands of other prisoners do not rise to a sufficiently

15

1    substantial risk of serious harm to [an inmate's] future health." *Williams v. Wood*, 223 F. App'x

2    670, 671 (9th Cir. 2007) (citation omitted).

3         A plaintiff alleging an Eighth Amendment violation must demonstrate that the defendants'

4    actions were both an actual and proximate cause of his injuries. *Lemire*, 726 F.3d at 1074. "The

5    requisite causal connection can be established not only by some kind of direct personal

6    participation in the deprivation, but also by setting in motion a series of acts by others which the

7    actor knows or reasonably should know would cause others to inflict the constitutional injury."

8    *Johnson v. Duffy*, 588 F.2d 740, 743–44 (9th Cir. 1978).

9         Plaintiff has alleged that upon his return to SATF,[5] he was attacked by two inmates,

10   Rogers and Ortega, and suffered a cut on the neck, a broken nose, and black eyes.  According to

11   Plaintiff, those inmates said that Arevalos and Brainard told them about Plaintiff's masturbation

12   charge and "let a man be a man" statement.  In support of these allegations, Plaintiff submits his

13   own declaration and the declaration of Andre L. Revis, a fellow inmate who was present during

14   the attack.  (Doc. 82 at 52–56.)  Defendant disputes that Rogers and Ortega were informed by

15   Arevalos of the RVR.  (Doc. 77-2 at 8.)  This factual dispute is material to Plaintiff's failure to

16   protect claim and precludes summary judgment.

17   **V.    QUALIFIED IMMUNITY**

18        **A.    Legal Standard**

19        Government officials enjoy qualified immunity from damages unless their conduct

20   violates "clearly established statutory or constitutional rights of which a reasonable person would

21   have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  The plaintiff bears the burden of

22   proving that the right allegedly violated was clearly established at the time of the violation; if the

23   plaintiff meets this burden, then the defendant bears the burden of establishing that the defendant

24   reasonably believed the alleged conduct was lawful.  *See Sorrels v. McKee*, 290 F.3d 965, 969

25   (9th Cir. 2002).  Plaintiff must show that the facts, taken in a light most favorable to him,

26

27   ――――――――――――――
     [5] Plaintiff returned to SATF on June 19, 2018.  (*See* Doc. 82 at 49.)  In his response in opposition
     to summary judgment, Plaintiff alleges he "was jumped on right after he went to his 602 hearing on

28   Arevalos at the 2nd level." (*Id.* at 6.)  However, the second-level response indicates that Sgt. Urban
     conducted the second-level interview on October 12, 2019.  (*Id.* at 63.)  The attack occurred on November
     14, 2018.  (*Id.* at 65.)

16

1  demonstrate (1) the defendant's conduct violated a constitutional right, and (2) the right was

2  clearly established. *Saucier v. Katz*, 533 U.S. 194, 201 (2001).  The district court has discretion

3  to determine which of the first two *Saucier* factors to analyze first.  *See Ashcroft v. al-Kidd*, 563

4  U.S. 731, 735 (2011) (citing *Harlow*, 457 U.S. at 818).

5      "Clearly established" means that "the right must be sufficiently clear that every

6  reasonable official would have understood that what he is doing violates that right." *Mullenix v.*

7  *Luna*, 577 U.S. 7, 11 (2015) (per curium) (quoting *Reichle v. Howards*, 566 U.S. 658, 664

8  (2012)); *Saucier*, 533 U.S. at 202.  The determination of whether a right is clearly established

9  must be "particularized" to the facts of the case.  *White v. Pauly*, ⸺ U.S. ⸺, 137 S. Ct. 548,

10  552, 196 L. Ed. 2d 463 (2017) (per curiam) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640

11  (1987)).  Although "[the Supreme] Court's caselaw does not require a case directly on point for a

12  right to be clearly established, existing precedent must have placed the statutory or constitutional

13  question beyond debate." *Kisela v. Hughes*, ⸺ U.S. ⸺, 138 S. Ct. 1148, 1152, 200 L. Ed. 2d

14  449 (2018) (quoting *White*, 137 S. Ct. at 551).  In the absence of a case directly on point, the

15  court may compare relevant "specific factors" to determine whether a reasonable officer would

16  have known that the conduct in question was unlawful.  *Isayeva v. Sacramento Sheriff's Dep't*,

17  872 F.3d 938, 947 (9th Cir. 2017).  Even if the plaintiff has alleged a violation of a clearly

18  established right, the official is protected by qualified immunity if he "reasonably but mistakenly

19  believed that his . . . conduct did not violate that right." *Jackson v. City of Bremerton*, 268 F.3d

20  646, 651 (9th Cir. 2001); *see also Saucier*, 533 U.S. at 205.  In general, qualified immunity

21  protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v.*

22  *Briggs*, 475 U.S. 335, 341 (1986).

23      Although both the "clearly established right" and "reasonableness" inquiries are

24  questions of law, where there are factual disputes as to the parties' conduct or motives, the case

25  cannot be resolved at summary judgment on qualified immunity grounds.  *See Torres v. City of*

26  *Madera*, 648 F.3d 1119, 1123 (9th Cir. 2011).  "Where the objective reasonableness of an

27  officer's conduct turns on disputed issues of material fact, it is a question of fact best resolved by

28  a jury. . . , only in the absence of material disputes is it a pure question of law." *Id.* (internal

1    quotation marks and citations omitted).

2         **B.     Discussion**

3         Defendant argues that she is entitled to summary judgment based on qualified immunity

4    because she did not violate Plaintiff's rights, and it would not have been clear to every

5    reasonable officer that "602 your fat ass" was protected speech as a threat to pursue an inmate

6    grievance.  Defendant does not address the RVR she filed against Plaintiff, for which Plaintiff

7    was found not guilty and which Plaintiff alleges was false and retaliatory.

8         The filing of a false report by a prison official against a prisoner is not a *per se* violation

9    of the prisoner's constitutional rights.  *See Muhammad v. Rubia*, 2010 WL 1260425, at *3 (N.D.

10   Cal., Mar. 29, 2010), *aff'd*, 453 F. App'x 751 (9th Cir. 2011) ("[A] prisoner has no

11   constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which

12   may result in the deprivation of a protected liberty interest.").  An inmate alleging he has been

13   subjected to a false RVR can state a cognizable civil rights claim in two ways: (1) by alleging the

14   false RVR was filed in retaliation for his exercise of a constitutional right, or (2) by alleging he

15   was not afforded procedural due process in the RVR hearing.  *Scott v. Johnson*, No. 1:19-cv-

16   01079-ADA-HBK (PC), 2022 WL 17082491, at *5 (E.D. Cal. Nov. 18, 2022) (citing *Richardson*

17   *v. Tuman*, No. 1:18-cv-01166-EPG (PC), 2019 WL 669569, at *6 (E.D. Cal. Feb. 19, 2019), and

18   *Hines v. Gomez*, 108 F.3d 265, 269 (9th Cir. 1997)).

19        The "prohibition against retaliatory punishment is 'clearly established law' in the Ninth

20   Circuit for qualified immunity purposes."  *Chavez v. Robinson*, 12 F.4th 978, 1001 (9th Cir.

21   2021) (quoting *Rhodes* 408 F.3d at 569); *see also Entler*, 872 F.3d at 1043 (denying qualified

22   immunity to prison officials who allegedly retaliated against an inmate who filed administrative

23   complaints and threatened to file a civil lawsuit).  This prohibition applies "even where the

24   action taken . . . would otherwise be permissible."  *Shepard v. Quillen*, 840 F.3d 686, 694 (9th

25   Cir. 2016) (quoting *Smith* v. *Maschner*, 899 F.2d 940, 948 (10th Cir. 1990); citing

26   *Woods* v. *Smith*, 60 F.3d 1161, 1165 (5th Cir. 1995)).  Prison officials may not abuse a valid

27   procedure "as a cover or a ruse to silence and punish" an inmate.  *Bruce*, 351 F.3d at 1289.

28   ///

As discussed, Plaintiff's allegations of retaliation raise questions of fact that preclude summary judgment on the constitutional claim.  Likewise, the factual question of Defendant's motive for issuing the RVR prevents a finding that Defendant is protected by qualified immunity upon the record presently before the Court.

## VI. DEFAULT JUDGMENT

Plaintiff has filed a motion for default judgment against Defendants, which the Court construes as directed to Defendant Arevalos.  (Doc. 79.)  On April 15, 2022, Defendants filed a motion to modify the scheduling order and reset the April 19, 2022, dispositive motion deadline pending the Court's ruling on the exhaustion motion pending before the Court.  (Doc. 74.)  On April 19, 2022, the Court granted Defendant Arevalos an extension of fourteen days from the date of service of the order to file a dispositive motion, or by May 3, 2022.  (Doc. 75.)  As of May 8, 2022, Plaintiff had not been served with a copy of the motion, and he argues that he may be prejudiced by granting Defendant Arevalos additional time to file a dispositive motion.  (Doc. 79.)

Rule 55 of the Federal Rules of Civil Procedure, which governs default and default judgment, provides: "When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default."  Fed. R. Civ. P. 55(a).  Each defendant who was served has appeared and defended against Plaintiff's claims, and thus, Plaintiff is not entitled to a clerk's entry of default or default judgment by the Court.  Moreover, the court docket reflects that Defendant Arevalos filed her motion for summary judgment on May 4, 2022.  (*See* Doc. 77.)  This one-day tardiness does not entitle Plaintiff to judgment by default or on the merits.

Accordingly, Plaintiff's motion for default judgment (Doc. 79) should be denied.

## VII. COURT DELAYS

Plaintiff has recognized that different judges have been assigned to this case, which is indicative of the case management challenges presently faced by the Court.  "This Court has one of the heaviest caseloads in the nation, and due to unfilled judicial vacancies, which is further exacerbated by the Covid-19 pandemic, operates under a declared judicial emergency."  *Harris v. Fisher*, No. 1:22-cv-00716-HBK (PC), 2022 WL 4473384, at *1 (E.D. Cal. Sept. 26, 2022)

(considering involuntary dismissal under Fed. R. Civ. P. 41); *accord Atayde v. Napa State Hosp.*, No. 1:16-cv-00398-DAD-SAB, 2022 WL 1215234, at *1 (E.D. Cal. Apr. 25, 2022), *recons. denied*, 2022 WL 2392619 (E.D. Cal. July 1, 2022) ("This court's overwhelming caseload has been well publicized and the long-standing lack of judicial resources in this district long-ago reached crisis proportion."); *Avery v. Stainer*, No. 2:18-cv1302-JAM-ACP, 2020 WL 2857935, at *4 (E.D. Cal. Apr. 13, 2020) ("[P]laintiff is advised that the Eastern District of California maintains one of the heaviest caseloads in the nation, a significant portion of which is comprised of *pro se* inmate cases.  This sometimes causes unavoidable delays in the resolution of individual matters.").

Given these circumstances, Plaintiff's motion to move this case through the courts (Doc. 85) is granted.  The Court reiterates that this District's heavy caseload regrettably results in delays that the Court strives to avoid wherever possible.  (*See* Doc. 15.)

**VIII.   CONCLUSION**

Accordingly, it is HEREBY ORDERED:

1.    Plaintiff's motion to move this case through the courts (Doc. 85) is GRANTED; and

2.    Plaintiff's motion for a thirty-day extension of time to respond to Defendant Arevalos's motion for summary judgment (Doc. 81) is GRANTED *nunc pro tunc*.

Additionally, it is HEREBY RECOMMENDED:

1.    Defendants Brainard and Stohl's motion for summary judgment based on failure to exhaust administrative remedies (Doc. 63) be GRANTED and claims against these defendants be dismissed without prejudice;

2.    Defendant Arevalos's motion for summary judgment (Doc. 77) be DENIED; and

3.    Plaintiff's motion for default judgment (Doc. 79) be DENIED.

These findings and recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  **Within fourteen (14) days** after service of these findings and recommendations, any party may file written objections with the Court and serve a copy on all parties.  Such a document should be captioned,

"Objections to Magistrate Judge's Findings and Recommendations."  The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **December 30, 2022**

UNITED STATES MAGISTRATE JUDGE